[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of a marriage brought by the plaintiff husband against the defendant wife. The defendant has filed a counterclaim for dissolution as well and added a charge of intolerable cruelty to that of irretrievable breakdown.
The parties were married in 1988. They have one child, Joshua, age 3, whom they adopted in 1994. Both have lived in the state of Connecticut for at least one year preceding the institution of this action. Neither of them has been on state, local or federal aid.
At the time of the marriage the plaintiff ran an antique racing car business and he also raced cars. His business was located on Stratford Avenue, Stratford, Connecticut, and it is still there. The defendant was a marketing consultant but within a year after the marriage she changed to selling real estate, which is her present occupation.
It is apparent from the joint tax returns of 1993, 1994, 1995, filed by the parties that the defendant earned more money than the plaintiff and the difference in the last couple of years was substantial. However, it is not clear to the court that the earnings reported by the plaintiff were in effect his actual CT Page 11520 earnings.
Mr. King, the expert called by the defendant to evaluate the plaintiff's business, found it impossible to make an accurate evaluation because of the unusual accounting procedures and the lack of information that he was given. (See defendant's exhibit 99.) Mr. King's analysis indicates that there is $28,538 paid as commissions or officer's compensation. The only officer is the plaintiff. In addition, he states that during the 1996 fiscal year the plaintiff also received $38,116 from the company as a loan repayment. It is not reflected in the figures which Mr. King was using. (Exhibit 99.)
The plaintiff filed three financial affidavits, one in March of 1997 and the other in April of 1997 and the third in June of 1997. The amount he claims he earned in the March affidavit was $3,000 a month or $697.00 a week. In April, the affidavit stated his gross income was $348.84 a week and in June it became $125.00 with a note that business was currently generating no income after expenses and that he was being supported by family including child support payments.
Nevertheless, on the plaintiff's expenses, he lists $782.00 as his weekly expenses after deducting rent of $348.83, which he says he is not paying. This would imply that he had paid everything else. If that is so, where is the money coming from? In addition, at the same time that he has, in effect, said he is penniless, he has paid his lawyer somewhere between $40,000 and $50,000. A perusal of these documents as well as the plaintiff's testimony provides the court with very little credible evidence as to his income.
The court finds the plaintiff's income to be $782.33 per week, which is the amount he has listed as his expenses, less the amount of the expenses he said he did not pay on his April 30, 1997 financial affidavit as well as on his June, 1997 affidavit. Apparently his expenses remain the same and he is able to pay all except the one that he noticed that he did not pay. Consequently, the court will find that his income is at least $783.14 per week.
The net income of the plaintiff deducting only taxes from $782.33, which is found to be his income, is $522.00. The defendant's income on the other hand has been listed as that which she receives from her commissions and that which she receives from the rental of a building on the marital home's CT Page 11521 property. However, she has various investments, and the income from them is not listed. To get at her total income then, the court will use the same method it used to get at the plaintiff's; to wit: the amount of expenses listed on her affidavit. That amount is $2,388. Deducting taxes from that amount, leaves a balance of $1,592. Less the cost of day care, which is $300.00, leaves a balance of $1,292. Adding that sum to the $522.00 as the plaintiff's net income gives a total of $1,814.
The child support guidelines provide for a maximum amount of $327.00 for a single child where the parents have income of $1,700 or more. The percentage, however, on the income is 18.68 percent. At that percentage point, with the combined income of the parties totalling $1,814, the child support figure is $388.85. The plaintiff's net income appears to be 29 percent of the total net income of the parties and, therefore, his share of the child support figure amounts to $113.00.
Given the defendant's substantial assets and the rather small difference in their earnings, it appears to the court that alimony of only a $1.00 a year should be ordered for the life of the defendant.
The parties have agreed on custody and visitation and on a location to pick up and drop off the minor child as a result of a hearing in September, 1997, in which their agreement was made into a court order. That order is hereby continued and approved as in the best interest of the child.
With respect to the marriage in chief, it appears to have been stormy from its outset with the defendant claiming that she was being abused verbally and physically by the plaintiff, and the plaintiff claiming that he was being abused verbally rather than physically by the defendant. Thus, for example, whenever the child was to be picked up by the plaintiff for visitation, he would first go to the police station and ask to have some policeman there to protect him from his wife. It is true that in the course of the last few years of the marriage the defendant had two psychotic episodes which she related to the plaintiff's treatment of her but which appears to the court to be part of her ongoing depression aggravated, perhaps, by the plaintiff's treatment. On the other hand, while the defendant said she considered the plaintiff's treatment intolerable, she made no move to leave even though she is a woman of superior education, having earned her MBA at the University of Michigan, and having a CT Page 11522 career as a a successful realtor. In addition, during the course of the trial, she has bought another house while the marital home was on the market and has settled there.
Consequently, the complaint that the defendant made of intolerable cruelty the court does not believe was established.
The court finds that this was a marriage which broke down irretrievably with no hope of reconciliation and the cause was equally shared by both parties. It is, therefore, a no fault divorce.
The assets of the parties consist of the marital home which is on the market for sale at $550,000 although the original purchase price was over $600,000; the plaintiff's business and the defendant's newly acquired home which she values at $270,000 with a mortgage of $203,000 and an equity of $67,500 and is located on Brooklawn Parkway in Fairfield, Connecticut. The defendant lists additional assets of bank accounts, money market funds, credit union, etc., in the amount of $10,595, a retirement account in the amount of $10,000, a Smith Barney account in the amount of $91,657 and jewelry valued at $850.00 and household furnishings valued at $5,000. The last two items are estimates. In addition, the defendant values the Westport Turnpike property at $550,000. There are two mortgages on this property, a first in the amount of $270,000 and a second in the amount of $50,000. The defendant claims that the $50,000 is the plaintiff's responsibility and exhibit 5 indicates that to be so. The total equity in the house is $230,000 assuming the house sells for $550,000. The defendant also has a 1994 Intrepid valued at $13,000 and a 1987 Suburu wagon valued at $1,500.
The plaintiff's assets on the other hand appear to consist of his interest in the marital home, which he values at $600,000 but at the moment it is on the market for $550,000 and has not sold. He lists his interest in it at $118,000 having deducted the costs of sale and the second mortgage as well from the total price. He also lists a retirement account of $12,452.49, a bank account of $54.00, personal property in the dwelling estimated at $20,000, motor vehicles consisting of a 1985 Saab valued at $2,000 and his company at a value of $12,000.
It is clear that the plaintiff's major assets are in his company and the value of his company depends on his activities. The income tax returns for the corporation for 1994, 1995 and up CT Page 11523 to April of 1996 show increasing total sales and increasing revenues of $765,975 in 1996, $593,788 in 1995, $540,150 in 1994 (exhibit 99). It also showed that the purchases of goods and costs of goods sold was $643,580 in 1996 as against $494,479 in 1995 and that there was a gross profit of $126,195 in 1996 as against a $100,509 in 1995.
While the expenses brought the net income down to $616.00 in 11996 and $281.00 in 1995, part of the expenses were the commissions of $28,538 payable for the most part to the defendant. In sum, it does not appear to be a business that is going down hill but rather one that is on the rise. Moreover, during 1996, the evidence established that the plaintiff was spending a good deal of his time having his racing cars and those of his friend Maureen serviced at his shop which took time away from cars which would have brought in income.
Throughout this case, it has been increasingly frustrating to try to get any answers from the plaintiff of any accuracy with respect to his income or his assets. The defendant did testify that he frequently had large sums of cash, and when he was asked by the defendant's expert, Mr. King, if he had any record of his cash deposits, the plaintiff's reply was "Do you think I'm crazy?" Further, when Mr. King attempted to do an appraisal of the plaintiff's business, he felt it was not possible to do an accurate one because of the unusual accounting procedures of the plaintiff. Moreover, the plaintiff also hid some of his cars from the defendant's expert's appraisal. If the business is as bad as the plaintiff says and this whole situation is as bad as he says, one wonders why he has not declared bankruptcy.
Anyhow, whatever the value, it appears to the court that each should keep assets which they have accumulated on their own. The plaintiff his car company, the defendant her investments and bank accounts. As far as the house which the defendant purchased during the trial and therefore exposed her to being found in violation of a court order not to dispose of any assets or acquire any for that matter, that is off set by the plaintiff's selling the three cars, the possession of which he has retained. It is certainly not clear that any such sale did take place given the physical possession of the cars with the plaintiff. The house, on the other hand, which the defendant acquired is certainly a marital asset and the equity is $12,000 more than the alleged price of the cars that the plaintiff claims he sold. Since both were in violation of court orders in these two CT Page 11524 transactions, the court will consider it a wash and permit the plaintiff to continue whatever his interest is in the three cars and the defendant shall continue to maintain the house that she has bought assuming, of course, all of the responsibilities of maintenance and payment of taxes and mortgage, etc.
In any event, the fairest solution for this very mixed-up situation seems to be to divide the proceeds from the sale of the marital house equally as both parties contributed equally to the purchase and maintenance of the property except for the time the defendant was living in it when she was also getting the benefit of living there. However, the plaintiff should pay the second mortgage out of his proceeds so that the defendant's share is the difference between one-half the purchase price and the first mortgage and less, of course, one half of the costs of sale. If the defendant is still handling the property as a realtor when it is sold, then she should pay half of the commission to the plaintiff. If, however, the property does not sell within sixty (60) days after this judgment, it should be transferred to another agency to handle the sale because it has not sold for over a year while the defendant has been handling it.
Having considered all of the elements set forth in §§46b-81 and 46b-82, the court makes the following findings and orders.
1. The parties were married in 1988 in Connecticut, and the marriage has broken down irretrievably with no hope of reconciliation, and it is therefore dissolved.
2. The parties have one child, Joshua, adopted in 1994, and presently age 3.
3. The parties have agreed on custody and visitation of the child providing joint custody with the primary residence with the defendant. Visitation is in accordance with the agreement and order of September 30, 1997.
4. Neither party has received federal, state or local aid.
5. Both parties have resided in this state for at least a year prior to the institution of this CT Page 11525 action.
6. The plaintiff is ordered to pay the sum of $113.00 a week beginning one week after the date of the filing of this decision for the support of the minor child, Joshua, until he reaches the age of 18 or graduates from high school if he has not done so by the age of 18 but no later than age 19.
7. The plaintiff is ordered to provide the defendant with a $75,000 bond conditioned on the prompt payment of the child support order. This shall be provided within one week following the date of the filing of this decision.
8. The plaintiff shall pay the defendant $1.00 a year alimony until her death, cohabitation or remarriage. The defendant shall pay the plaintiff $1.00 a year alimony until his death, cohabitation or remarriage.
9. a. The marital home which is presently on the market shall continue to be on the market for a period of sixty (60) days from the date of the filing of this judgment under the exclusive agency of the defendant. However, if it does not sell in that period of time, then the agency shall be transferred to another broker, separate from the company for which the defendant works, and that broker shall decide at what price the house shall be offered for sale.
 b. Upon the sale of the house, the net proceeds shall be divided equally between the parties except that the second mortgage shall be totally the responsibility of the plaintiff (exhibit 5) and shall be paid by him and not deducted from the net proceeds of the sale. The net proceeds shall consist of the sale price less the first mortgage and the commission to the real estate agent who produces the sale and the usual costs of closing. In the event that the defendant is still the agent at the time of the sale, then CT Page 11526 the commission which she receives shall be divided equally with the plaintiff.
10. The plaintiff shall continue to provide medical, hospital, psychiatric and dental insurance for the minor child Joshua and also for the defendant should she wish to exercise her rights under COBRA with the requirement, however, that she pay the cost thereof. Any unreimbursed medical, dental, psychiatric, or hospital expenses shall be shared equally by the parties.
11. Each of the parties shall provide life insurance for the minor child Joshua in the amount of $50,000. Failure to do this may be excused if the party in question is rejected because of health.
12. The plaintiff shall also provide a policy of $50,000 on his life naming his wife as irrevocable beneficiary for so long as he has to provide alimony for her. Again, the only reason which may excuse him from this obligation is his rejection by insurance company for reasons of health.
13. If the parties cannot agree on the distribution of the personal items that were in the marital home, they shall take the matter up with Family Relations and Ramily Relations' recommendation can then be reviewed by the court.
14. The child tax deduction shall be the province of the defendant since she obviously is providing the major portion of the support for the child.
15. Except as otherwise provided for above, the plaintiff shall retain all assets in his name including his business and any stock or investments associated therewith, free from any claim or demand by the defendant.
16. Except as otherwise provided for above, the defendant shall retain all assets in her name including the new home on Brooklawn Parkway in Fairfield, Connecticut, free from any claim or demand by the plaintiff. CT Page 11527
17. The defendant shall retain all automobiles in her name, and the plaintiff shall retain all automobiles in his name.
18. The defendant shall be solely responsible for all liabilities listed on her affidavit and shall indemnify and hold harmless the plaintiff from any claims or demand thereon.
19. The plaintiff shall be solely responsible for all liabilities listed on his affidavit as well as all debts in the name of his business and shall indemnify and hold harmless the defendant from any claims or demand thereon.
20. Each party shall be responsible for her or his own counsel fees.
It is so ordered.
MARGARET C. DRISCOLL JUDGE TRIAL REFEREE